IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SONYA M. VARNEY,** *et al.***,**

    **Plaintiffs,**

  **vs.**                                         **Civil No. 2:13-cv-346**
                                                     **Magistrate Judge King**

**INFOCISION, INC.,** *et al.***,**

    **Defendants.**

**OPINION AND ORDER**

This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint* ("*Motion to Dismiss*"), Doc. No. 17, *Plaintiffs' Memorandum of Law and Response to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint* ("*Plaintiffs' Response*"), Doc. No. 26, and the reply, Doc. No. 34.[1] For the reasons that follow, the *Motion to Dismiss* is **GRANTED in part** and **DENIED in part**.

**I.    Background**

The *Amended Complaint*, Doc. No. 13, contains the following allegations. Plaintiff Sonya M. Varney ("plaintiff" or "plaintiff Varney") was employed by defendant InfoCision, Inc., from September 5, 2000, through August 2010, when she "voluntarily ceased employment." *Id*. at ¶¶ 5-6. Plaintiff returned to work for defendant in July 2011 as a Human Resources Coordinator. *Id*. at ¶¶ 7, 26. Plaintiff was

---

[1] The *Amended Complaint,* Doc. No. 13, names as defendants InfoCision, Inc., and InfoCision Management Corporation, but describes the latter as a "registered . . . trade name of Defendant InfoCision, Inc. . . . " *Amended Complaint*, ¶ 3. The Court will therefore refer to defendants collectively as "InfoCision, Inc." or "defendant."

pregnant when she returned to work and was told that she "did not qualify for FMLA, but that the company would grant her 12 weeks of leave." *Id.* at ¶ 7. Plaintiff gave birth on August 21, 2011, and returned to work on November 1, 2012, at the request of her immediate supervisor, Dana Wherley. *Id.* at ¶¶ 8-10.

In November 2011, two female employees expressed their concerns to plaintiff about discrimination based on their sex and/or age. *Id.* at ¶ 11. Plaintiff "was concerned and consulted her husband, [plaintiff] Donald Varney, a licensed attorney, regarding whether it was legal for an employer to retaliate against employees for reporting discrimination." *Id.* Donald G. Varney "urged [plaintiff] to report any such accusations and informed [plaintiff] that InfoCision could be liable if such employee concerns were not reported and/or if those employees reporting discrimination were retaliated against." *Id.* Plaintiff then reported the alleged discrimination to Dana Wherley and Jill Avery, employees of defendant. *Id.*

On January 19, 2012, plaintiff was given a "verbal warning for attendance" and was "counseled and received a verbal warning for allegedly "shar[ing] 'confidential information' with her husband" and "instruct[ing] employees to come directly to her with any reports of problems with their manager, Dan Nettinger." *Id.* at ¶ 13. When giving the verbal warning, "Carla Grasso raised her voice on numerous occasions and basically would not allow Plaintiff Varney to speak." *Id.* The warning was also given without following "standard protocol" and with knowledge that plaintiff was undergoing treatment for post-partum depression. *Id.*

2

Following that verbal warning, "[t]he office staff began communicating with Plaintiff Varney primarily by e-mail and phone, she was no longer invited to eat lunch with them, and she was left out of everyday conversations which before she had been previously included in." *Id.* at ¶ 14.  Certain employees would ask plaintiff to communicate with them only by e-mail; other employees would not communicate with plaintiff "without a witness being present." *Id.* Prior to and after the warning, an administrative employee "began eavesdropping on Plaintiff Sonya Varney's telephone calls and employee conversations" and "plunder[ing] through work documents in Plaintiff Sonya Varney's office." *Id.* at ¶ 15.  Dan Nettinger allegedly withheld "incident sheets" from plaintiff "for several days" and then reported plaintiff for not completing work associated with the incident sheets in a timely manner. *Id.* at ¶ 16.  On the day following the verbal warning, plaintiff applied for a human resources position with defendant and "later received a rejection letter regarding the position." *Id.* at ¶ 18.

On January 23, 2012, the verbal warning was reduced to writing. *Id.* at ¶ 19.  The written warning specified a procedure to be followed for reporting concerns about Dan Nettinger and supervisors and stated the following: "[T]here have not been any issues with your general day-to-day tasks.  Please understand that while I know that you have the necessary skills to perform your job, you must show immediate improvement in maintaining confidentiality, as well as a positive environment." *Id.*  Plaintiff "took this statement, and the treatment of her by Defendants immediately prior to and after her verbal

3

warning, to indicate that her job was in jeopardy." *Id*.

On February 21, 2012, plaintiff contacted Human Resources concerning her verbal warning. *Id*. at ¶ 21. Plaintiff disputed the allegations of misconduct made in the verbal warning and detailed the previously reported discrimination and the "different treatment she was receiving from co-workers *after* the verbal warning." *Id*. (emphasis in original). Plaintiff also "reported that it is obvious that the confidentiality of her verbal warning was compromised by managers and others . . . based on such treatment." *Id*. Plaintiff was later "informed that her verbal warning had been withdrawn," "that she was not being written up," and that "the company had made a mistake and that Plaintiff Varney did qualify for FMLA." *Id*. at ¶¶ 22-23.

Plaintiff "ceased being an employee of Defendants on May 31, 2012 . . . [because she] felt that she had no option but to resign due to the hostile treatment she endured by Defendants." *Id*. at ¶ 25.

**II. Standard**

A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. *See Roth Steel Prods. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). In determining whether dismissal on this basis is appropriate, a complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *See Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. Cmty. Mut. Ins. Co.*, 896 F. Supp. 734, 738 (S.D. Ohio 1994). The United States Supreme Court has explained that, "once a claim has been stated adequately, it may be

4

supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). However, a plaintiff's claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

**III. Discussion**

Plaintiff's first cause of action alleges wrongful constructive discharge in violation of public policy. Plaintiff specifically maintains that defendant constructively discharged her in violation of the public policy reflected in O.R.C. § 4112.02 and Article I, Section 16 of the Ohio Constitution. *Amended Complaint*, ¶¶ 27-32.

To prevail on this claim, plaintiff must first prove that she was constructively discharged from her employment. Ohio courts[2]

> apply an objective test in determining when an employee was constructively discharged, *viz.*, whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.

*Mauzy v. Kelly Servs., Inc.*, 75 Ohio St. 3d 578, 588-89 (1996) (citations omitted). "In applying this test, courts seek to determine whether the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent." *Id*. at 589.

---

[2] Because this is a diversity action, the Court must apply Ohio law in evaluating the sufficiency of plaintiffs' claims. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

5

The test is based on a reasonable person; employees therefore have an obligation to act reasonably and "not to assume the worst[] and . . . jump to conclusions." *See Farris v. Port Clinton Sch. Dist.*, No. OT-05-041, 2006 WL 964719, at *14 (Ohio Ct. App. Apr. 14, 2006) (citing *Mayo v. Kenwood Country Club, Inc.*, 731 N.E.2d 190 (Ohio Ct. App. 1999)).

In order to prevail on this claim, plaintiff must also prove that her discharge violated public policy. Specifically, plaintiff must establish:

> (1) [A] clear public policy manifested in a statute, regulation or the common law; (2) that discharging an employee under circumstances like those involved would jeopardize the policy; (3) that the discharge at issue was motivated by conduct related to the policy; and (4) that there was no overriding business justification for the discharge.

*Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 460 (6th Cir. 2004) (citing *Kulch v. Structural Fibers, Inc.*, 78 Ohio St. 3d 134, 151 (1997)). *See also Leininger v. Pioneer Nat'l Latex*, 115 Ohio St. 3d 311, 313 (2007) (citing *Collins v. Rizkana*, 73 Ohio St. 3d 65, 69-70 (1995)). The first two elements are questions of law to be determined by the court; elements three and four are questions of fact to be decided by the trier of fact. *Leininger*, 115 Ohio St. 3d at 313 (citing *Collins*, 73 Ohio St. 3d at 70).

The *Amended Complaint* alleges that "[a] clear public policy exists and is manifested in O.R.C. [§] 4112.02 making it unlawful for employers to discriminate against persons 'with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." *Amended Complaint*, ¶

6

28. Section 4112.02 provides in relevant part:

> It shall be an unlawful discriminatory practice:
>
> (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

O.R.C. § 4112.02(A). Section 4112.02 does not render unlawful *all* discrimination related, directly or indirectly, to employment. Rather, § 4112.02 prohibits – and creates a clear public policy against — only employment discrimination based on race, color, religion, sex, military status, national origin, disability, age, or ancestry. *See e.g., Leininger*, 115 Ohio St. 3d at 314-15 (finding a clear public policy against age discrimination in the employment setting).

*Plaintiffs' Response* clarifies that plaintiff does not claim membership in any of the classes listed in and protected by § 4112.02(A); rather, plaintiff alleges that she was retaliated against for reporting sex and age discrimination against other employees of defendant. *Plaintiffs' Response*, pp. 7-8; *Amended Complaint*, ¶ 11. Retaliation for reporting discrimination, plaintiff argues, violates the public policy, reflected in § 4112.02, that encourages "making a report of discrimination against a manager." *Plaintiffs' Response*, pp. 7-8. Plaintiff also argues that a common-law public policy in this regard is particularly applicable because O.R.C. Chapter 4112 does not provide a remedy for individuals who report discrimination against, not themselves, but another person. *Id*. at p. 7. Defendant

7

argues that plaintiff's public policy claim premised on § 4112.02 fails as a matter of law because "Chapter 4112 provides protection and remedies to individuals who have been discriminated against, as well as those who oppose discrimination." *Motion to Dismiss*, pp. 8-9, p. 9 n.7.  This Court agrees.

"[I]t is well-established that wrongful discharge in violation of state public policy claims fail where other statutes provide adequate protection and remedies."  *Chenzira v. Cincinnati Children's Hosp. Med. Ctr.*, No. 1:11-CV-917, 2012 U.S. Dist. LEXIS 182139, at *11-12 (S.D. Ohio Dec. 27, 2012) (citations omitted).  *See also Tripp v. Buckeye Ranch*, No. 2:09-CV-827, 2010 U.S. Dist. LEXIS 40017, at *5 (S.D. Ohio Apr. 23, 2010); *Breech v. Scioto Cnty. Reg'l Water Dist. # 1*, No. 1:03-CV-360, 2006 U.S. Dist. LEXIS 58545, at *27 (S.D. Ohio Aug. 21, 2006).  There is simply "'no need to recognize a common-law action for wrongful discharge' if 'the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach.'"  *Akatobi v. Aldi, Inc.*, No. 2:09-CV-1028, 2010 U.S. Dist. LEXIS 32020, at *7-8 (S.D. Ohio Mar. 31, 2010) (quoting *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 244 (Ohio 2002)).  "'[W]hen a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy.'"  *Id.* (quoting *Leininger*, 115 Ohio St. 3d at 317).

As discussed *supra*, plaintiff contends that she was retaliated against for reporting sex and age discrimination against other

8

employees.  This conduct, *i.e.*, opposing conduct that violates O.R.C. Chapter 4112, directly implicates the rights and remedies established by O.R.C. § 4112.02.  Specifically, § 4112.02(I) makes it unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section[.]"  Moreover, O.R.C. § 4112.99 "makes violators of R.C. Chapter 4112 'subject to a civil action for damages, injunctive relief, or any other appropriate relief,'" *Leininger*, 115 Ohio St. 3d at 318 (quoting O.R.C. § 4112.99), "for any form of discrimination identified in the chapter." *Id*. (citing *Elek v. Huntington Nat'l Bank*, 60 Ohio St. 3d 135 (1991)).  In other words, O.R.C. Chapter 4112 provides "broad" statutory remedies, *id*. at 317-18, for retaliation against employees who oppose unlawful age and sex discrimination in the workplace.  The public policy underlying Chapter 4112 will therefore not be jeopardized even in the absence of a common law claim for wrongful discharge based on the public policy reflected in O.R.C. § 4112.02.  Accordingly, the Court declines to recognize plaintiff's claim premised on a violation of the public policy manifested in O.R.C. § 4112.02.

Plaintiff's first cause of action also alleges wrongful constructive discharge in violation of public policy as manifested in the "Open Courts" provision of the Ohio Constitution, Ohio Const. art. I, § 16.  *Amended Complaint*, ¶¶ 27-32.  The Open Courts provision provides in pertinent part: "All courts shall be open, and every person, for an injury done him in his land, goods, person or reputation, shall have remedy by due course of law, and shall have

9

justice administered without denial or delay." Ohio Const. art. I, § 16.

> The *Amended Complaint* alleges that plaintiff
>
> consulted her husband, Donald Varney, a licensed attorney, regarding whether it was legal for an employer to retaliate against employees for reporting discrimination. Plaintiff Donald Varney urged Plaintiff Sonya Varney to report any such accusations and informed her that InfoCision could be liable if such employee concerns were not reported and/or if those employees reporting discrimination were retaliated against.

*Amended Complaint*, ¶ 11. Plaintiff reported alleged discrimination against other employees in November 2011 and, she alleges, she was "counseled and received a verbal warning" on January 19, 2012 for, *inter alia*, "shar[ing] 'confidential information' with her husband." *Id*. at ¶¶ 11, 13. The *Amended Complaint* details the resulting "hostile treatment" that plaintiff allegedly endured as a result of contacting an attorney, and alleges that plaintiff's constructive discharge was motivated by "conduct related to the[] [Open Courts provision]" and jeopardizes the Open Courts provision. *Id*. at ¶¶ 13-25, 29-30. These allegations are, in the view of this Court, sufficient to state a colorable claim of wrongful constructive discharge in violation of public policy against defendant. *See Noble v. Brinker Intern., Inc.*, 175 F. Supp. 2d 1027, 1043 (S.D. Ohio 2001) ("Ohio's Open Courts provision discourages retaliation by employers against employees who consult attorneys . . . ."); *Abrams v. Am. Computer Tech.*, 860 N.E.2d 123, 130-31 (Ohio Ct. App. 2006) (finding that Ohio public policy protects an individual's right to consult with an attorney about access to legal redress for injuries done to the individual) (citing *Chapman v. Adia Servs., Inc.*, 688 N.E.2d 604 (Ohio

10

Ct. App. 1997)); *Simonelli v. Anderson Concrete Co.*, 650 N.E.2d 488, 492 (Ohio Ct. App. 1994) ("[W]e conclude that the act of firing an employee for consulting an attorney could serve as the basis for a public policy exception to the common-law employment-at-will doctrine.").

The *Amended Complaint* also asserts state law claims for intentional infliction of emotional distress, defamation, and loss of consortium. Each claim will be addressed in turn.

To establish a claim for intentional infliction of emotional distress under Ohio law, a plaintiff must allege facts showing that

> (1) defendants either intended to cause emotional distress, or knew or should have known that their conduct would result in serious emotional distress to plaintiff; (2) defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) defendants' conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff suffered serious emotional distress, such that no reasonable person could be expected to endure it.

*Bragg v. Madison*, 20 F. App'x 278, 285-86 (6th Cir. 2001) (citing *Roe v. Franklin Cnty.*, 673 N.E.2d 172, 180 (Ohio Ct. App. 1996)). *See also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citing *Hanly v. Riverside Methodist Hosp.*, 603 N.E.2d 1126, 1132 (Ohio Ct. App. 1991)).

In the case presently before the Court, plaintiff alleges that she was given a verbal warning and that the person giving the warning "raised her voice on numerous occasions and basically would not allow Plaintiff Varney to speak." *Amended Complaint*, ¶ 13. After the warning, "office staff began communicating with [plaintiff] primarily by e-mail and phone, she was no longer invited to eat lunch with them,

11

and she was left out of everyday conversations which before she had been previously included in." *Id*. at ¶¶ 13-14. One employee allegedly eavesdropped on plaintiff's conversations and look through her work documents; another employee allegedly refused to communicate with plaintiff in the absence of a witness and allegedly withheld "incident sheets" for a time and then punished plaintiff for not timely completing those incident sheets. *Id*. at ¶¶ 15-16. Finally, plaintiff alleges that she applied for a human resources position with defendant and "later received a rejection letter regarding the position." *Id*. at ¶ 18. Defendant argues that these facts fail to rise to the level of outrageousness required of a claim of intentional infliction of emotional distress. *Motion to Dismiss*, pp. 11-13. This Court agrees.

"Ohio courts define extreme and outrageous conduct exceedingly narrow[ly]." *Wolfe v. Thermo Fisher Scientific, Inc.*, No. 2:08-cv-933, 2009 WL 1255023, at *2 (S.D. Ohio May 4, 2009) (citing *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) ("[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement.")). The Ohio Supreme has explained:

> With respect to the requirement that the conduct alleged be "extreme and outrageous," we find comment d to Section 46 of the Restatement, *supra*, at 73, to be instructive in describing this standard:
>
> "[]It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in

12

> character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'
>
> "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

*Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 374-75 (Ohio 1983) (quoting Restatement of the Law 2d, Torts (1965) 71, § 46(1)). *See also Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 678 (6th Cir. 2005) (citing the same passage); *Wilson v. Columbus Bd. of Educ.*, 589 F. Supp. 2d 952, 971 (S.D. Ohio 2008) (same).

In the case presently before the Court, plaintiff has alleged acts that may be inconsiderate and unkind and which she considers to be "atrocious" and "intolerable." *Amended Complaint*, ¶ 35. However, courts have dismissed claims of intentional infliction of emotional distress where the plaintiff's descriptions of the defendant's conduct were far more egregious than those raised in this case. *See e.g.*, *Wolfe*, 2009 WL 1255023 at *2 (finding insufficiently extreme or outrageous an employer's sexually-charged remarks, false charge of sexual harassment and false imprisonment of the plaintiff for four hours with no food or water while interrogating, intimidating,

13

harassing and embarrassing her); *Rubin v. Ford Motor Co.*, No. 1:04-cv-836, 2006 WL 2128934, at *5-6 (S.D. Ohio July 27, 2006) (finding employer's "intentional, offensive and unjustified pattern of conduct (both verbal and physical)," including poking and swearing at the plaintiff, to be insufficiently extreme or outrageous); *Hill v. Vill. of West Lafayette*, No. 95CA27, 1996 WL 487943, at *4-6 (Ohio Ct. App. May 24, 1996) (finding employer's false disciplinary charges and defamatory conduct against plaintiff insufficiently extreme or outrageous); *Baab v. AMR Servs., Corp.*, 811 F. Supp. 1246, 1269-70 (N.D. Ohio 1993) (finding co-workers' display of photographs of scantily clad and naked women and the plaintiff's receipt of "pornographic, explicit photographs and sex toys in her locker" not intolerable in a civilized society and therefore not extreme or outrageous). In light of this authority and the relatively mild allegations of the *Amended Complaint*, the Court concludes that defendant's motion to dismiss plaintiff's claim of intentional infliction of emotional distress is meritorious.

Plaintiff's third cause of action is for defamation. A claim of defamation under Ohio law includes the following elements:

> First, there must be the assertion of a false statement of fact; second, that the false statement was defamatory; third, that the false defamatory statement was published by defendants; fourth, that the publication was the proximate cause of the injury to the plaintiff; and fifth, that the defendants acted with the requisite degree of fault.

*Voyticky*, 412 F.3d at 677-78 (citing *Celebreeze v. Dayton Newspapers, Inc.*, 535 N.E.2d 755, 759 (Ohio Ct. App. 1988)).

In the case presently before the Court, the *Amended Complaint* alleges that "defendants' false and defamatory statements were of and

14

concerning [plaintiff] and contained the false statement that [plaintiff] was in some way making complaints about Dan Nettinger in order to get him in trouble so that [plaintiff] could get Dan Nettinger's job." *Amended Complaint*, ¶ 39. *See also id*. at ¶ 41. *Plaintiffs' Response* clarifies that the alleged defamatory statement was made during defendant's verbal warning to plaintiff. *Plaintiff's Response*, p. 11.

The allegations in the *Amended Complaint* may be sufficient to establish that defendant made a false statement of fact; however, there is no factual allegation that defendant's allegedly false statement was published to a third party. Plaintiff concluded that "it is obvious that the confidentiality of her verbal warning was compromised by managers and others at [defendant's] Gallipolis, Ohio, location," *id*. at ¶ 22, but that conclusion says nothing of whether that particular component of the verbal warning was published to a third party. Plaintiff also alleges that "Defendants communicated and/or published or caused these defamatory statements to be communicated and/or published by failing to conduct an adequate investigation into the allegations against [plaintiff] and/or failing to abide by Defendants' own confidentiality policies." *Id*. at ¶ 38. However, an alleged failure to investigate the truthfulness of a statement or to follow one's own disciplinary policies is simply not tantamount to the publication of a statement to a third party. In short, this Court concludes that the *Amended Complaint* fails to state a claim for defamation because it does not identify a specific defamatory publication to a third party.

15

Finally, the *Amended Complaint* asserts a loss of consortium claim on behalf of plaintiff Donald G. Varney:

> Plaintiff Donald G. Varney has lost the consortium and services of his wife, Plaintiff Varney and inasmuch as the injuries of Plaintiff Varney are permanent and lasting in nature, Plaintiff Donald G. Varney will continue in the future to be deprived of the consortium and services of his wife, Plaintiff Varney.

*Amended Complaint*, ¶ 47(d). Defendant argues that a loss of consortium claim is derivative of a spouse's claim for bodily injury and that the *Amended Complaint* does "not allege[] facts which constitute any legal cognizable tort committed by InfoCision that resulted in bodily injury to Plaintiff." *Defendant's Motion*, p. 19. *Plaintiffs' Response* does not address the loss of consortium claim.

"'[A] claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers *bodily injury*.'" *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790-71 (6th Cir. 2007) (emphasis in original) (quoting *Bowen v. Kil-Kare, Inc.*, 63 Ohio St. 3d 84 (Ohio 1992)). *See also Blatnik v. Avery Dennison Corp.*, 774 N.E.2d 282, 297 (Ohio Ct. App. 2002) (holding that a "claim for loss of consortium . . . cannot stand because there is no evidence of bodily injury sustained"). "Ohio courts have repeatedly held that the term 'bodily injury' does not include nonphysical harms." *Campbell*, 509 F.3d at 791 (citations omitted).

In the case presently before the Court, the *Amended Complaint* does not allege that plaintiff Sonya M. Varney suffered a bodily injury as a consequence of defendant's actions. Accordingly defendant's motion to dismiss plaintiff Donald G. Varney's loss of

16

consortium claim is meritorious.

**WHEREFORE**, *Defendant's Motion*, Doc. No. 17, is **GRANTED in part** and **DENIED in part**.  Plaintiff's claim of constructive discharge in violation of the public policy manifested in O.R.C. § 4112.02 is **DISMISSED**.  Plaintiffs' claims of intentional infliction of emotional distress, defamation and loss of consortium are likewise **DISMISSED**.  Plaintiff's claim of constructive discharge in violation of the public policy manifested in Ohio Const. art. I, § 16 may proceed.


October 2, 2013                              *s/Norah McCann King*
                                          Norah M<sup>c</sup>Cann King
                                     United States Magistrate Judge